At this time, would the Counsel for the Appellant please introduce himself on the record to begin. Thank you, Your Honor. And may it please the Court, I'm Matt Gazzai, appearing on behalf of the Satanic Temple. Could you just speak up a little? Yes, Your Honor. I think that's better. Thank you. Okay. I'd like to reserve three minutes for rebuttal. You may. Thank you, Your Honor. And once again, may it please the Court, Your Honors, the principal issue for today is the problem over Boston's legislative prayer custom. To be constitutional, a legislative prayer custom must, quote, stand out as an example of respect and tolerance for differing views and be, quote, an honest endeavor to achieve inclusivity and nondiscrimination. That comes from the most recent Supreme Court statement on point. That's American Legion 588 U.S. at 63. Now, there are four material facts not in dispute which required entry of judgment in favor of the Temple. Number one, Boston's prayer custom endorses particular ministers. That's not argument. That's from Counselor Asabi George herself admitting both that this prayer opportunity is prefaced with praise and, second, that the fact of the invitation is itself an implied endorsement. Number two, there are no neutrality enforcing constraints on the invitation. These are whim-based political decisions. Now, that's a problem because the fundamental purpose of the Assassination Clause is to separate religion from politics. That it's not just Lemon that says that, by the way. That goes back to Everson v. Board of Education. And that also cites back to some kind of an article from 1901. Very clearly, there is no neutrality enforcing mechanisms here. There is no effort to determine which ministers are interested in giving this, Contra, Town of Greece, Contra also Rubin v. Lancaster, California, coming out of the ninth. There is no disclaimer that this prayer opportunity is not intended to be a sermon. Quite the opposite. Even the Dish Report found that these are sometimes sermons, which, again, traces back to testimony from Counselor Asabi George. Once again, Contra, Town of Greece, Contra, Rubin v. City of Lancaster. And, number three, this prayer opportunity is directed at the audience. Contra, Town of Greece. Town of Greece explicitly says, direct this to the audience to participate. That's your red flag. These are unconstitutional sermons, not constitutional acknowledgements of religion generally. Finally, number four, which is why we're here today. The Temple is systematically excluded from this prayer opportunity. Boston makes no effort whatsoever at inclusivity and non-discrimination. The exact opposite is what's going on here. Two counselors came out and said it straight out, that so long as they're in charge of an invite, the Temple will never be invited. Counselor Asabi George chuffed at the idea of my client's sense of entitlement to an equal right, and Counselor McCarthy took issue with a call between those he felt a positive impact from and those he didn't. This is not inclusivity. This is not non-discrimination. It's the exact opposite. On that last point, are you saying that the Council could not have adopted as a de facto policy inviting organizations of whatever type that are contributing to social welfare in their communities and doing things for their constituents? Am I saying they can't or am I saying they didn't? You're saying they can't. I'm saying they didn't, but the answer to your question is they can. However, that creates an issue of endorsement. So what separates those religions that are, for example, participating in whatever Boston deems to be adequately socially apt? Who makes those determinations? Stay with it. Each counselor is picking someone to give the invocation who is contributing in their community, and to date they didn't, until this litigation, they didn't know your organization had, so you weren't on the list. That raises two issues. Number one, that raises the town of Greece problem where they're not looking into who's interested in giving this prayer. That tends to suggest endorsement. And number two, religions are entitled to an equal opportunity to participate, not those religions which lobby, not those religions which satisfy whatever subjective criterion will arise in the course of litigation, which we contend is just backwards-facing justifications. In town of Greece, how was this selection made? Selection in town of Greece, they, similar to Lancaster, by the way, they looked throughout, I believe it was the yellow pages, determined what are all the congregations in town, and they also issued some kind of an invite to everyone. It was made publicly known somehow or another that this is an opportunity. It's available to all. And then how did they select? First come, first serve. It was a first come, first serve? Correct, yes. In town of Greece, they made it very important to note minister or layperson, even an atheist, everyone came in, nobody was rejected. That's the distinguishment here. Well, who's been, here certainly the selection is different. You need to be invited. But I thought you said that it was okay if they just invited ones who contributed to the welfare of the spiritual welfare, I mean, the material welfare of the constituents in their districts. The issue is that these facts are interwoven amongst each other. So the fact of the matter is that this prayer opportunity is not supposed to be some medal, for lack of a better word, that you hand out as a congratulations for being a good steward. So now you're saying they couldn't do that? In my opinion, that's not what it's supposed to be. What does that mean when you say not supposed to be? You mean under town of Greece, that would be an establishment cause violation? In and of itself, I think no, which is why I'm having difficulty giving a straight answer. In and of itself, I don't think that that's by itself a problem. What becomes a problem is when you put a spotlight on that particular individual, you add on the endorsement, and then you say this is what we put forth. Endorsement, to be specific. Is there a regular practice that they say we endorse this religion, or are you simply saying that because they've been chosen to do the invocation, that's an endorsement, which would seem to undo your prior answer? To be very clear, I'm not saying that's endorsement. Counselor Asabi George volunteered that testimony. But endorse the efforts of the invocating entity, or the religious philosophy of that entity? You can't separate the two. That's the bottom line of this case. You're saying that counsel could have a policy where we're going to invite people to give the invocation who have been contributing to the welfare of our constituents. So far, so good. So far, so good. And when they get up, I'm going to praise them for that bake sale they put on at the high school every week that raises money for our preschool program. Suddenly, they've endorsed them. That's no good? That's not the suddenly they endorse them. That's no good. The suddenly they endorse them, that's no good, is when they're speaking in the voice of Boston, when this is a singular opportunity to come in, and this opportunity is not equally available to all. Why do you say it's not equally available to all? It's equally available to all the people who contribute at that level to the community. That's religious gerrymandering. Now I'm just not following. The criterion that we're using for selection in this hypothesized world is the criterion Judge Coyote spelled out for you. Correct. You said that was a permissible criterion? So far, in and of itself, correct. Now they're relying on that in choosing who to come. We the court or we the city? The city. Okay. I'm listening. Well, I'm kind of done. If they've done that, then is it okay? In and of itself, yes. Add on endorsement. When you say the endorsement, what do you mean by the word endorsement? It's the gushing praise and the fact that we're inviting on this particular religion to give a sermon in front of an audience in the voice of Boston. Well, what words? What words do you mean? What words are spoken that you say constitute an endorsement of their religion? I can't quote directly from the YouTube videos. They're about two to three minutes of gushing praise. It's essentially what a great minister this person is, because they're so great in their community, meaning their religious community, to be clear. This is what they do for the city of Boston in this particular room, or whatever reason that they're inviting. It's not always within the city of Boston. So just so I follow, is the point you're making a point that would be equally true if it was a first-come, first-served Yellow Pages approach? No. So if it's a first-come, first-served Yellow Pages approach, then the person gets up and they say, I'm now introducing Minister X. What a great minister. Fantastic. Best minister. One of the best ministers. Permissible or impermissible? I think impermissible. I think any level of endorsement. So there's got two things going. The selection criterion is one possible way in which they could transgress the establishment clause. Then there's a separate thing. No matter what the selection criterion is, they could transgress the establishment clause by what they say when they introduce the person who's been selected. Correct. Okay. So just doing it in two pieces, is there anything about the selection criteria that transgresses the establishment clause? If so, what is it? The selection criterion being whim-based and politically motivated. This is not, in fact, about this is the good work that this person is doing in the community. Councilor Savi-George testified straight out that this is a political reward. It's for those and only for those who have had some positive benefit or are important to my political career was the exact language. That's the problem. When it becomes a quid pro quo political reward, it's no longer about these are the good deeds that this organization has done. How is that an establishment clause problem? It's the intermingling of church and state. The whole purpose of the establishment clause is to separate the two. And this is a point that they raised in response. There's nothing untoward if, for example, a councilor wants to politic at whatever the church potluck is. There's everything untoward about it. IRC 501c3 explicitly prohibits it, and Everson v. Board of Education also explicitly prohibits it. The whole point is to separate our government ministers from our religious ministers. That's what this country was founded on. Well, that isn't quite right because we can have government ministers like the chaplain of the U.S. House of Representatives. And that brings us right back to American Legion, in which they say that's constitutionally kosher provided that it's an honest endeavor to achieve inclusivity and non-discrimination. I mean, one chaplain for 10 years? That was Marsh. That's what they did. Well, that's my point. Well, if they can pick one chaplain for 10 years of invocations, it seems odd that you would then say it's not inclusive when Boston is picking a different invocation speaker every meeting. That's what you're describing right now as Williamson v. Brevard County arising out of the 11th Circuit. It's unconstitutional for government ministers. Dan, hold on one second. I think we've lost the feed for Judge Lynch. No, I'm fine. Oh, okay, never mind. I apologize. Go ahead. I see that I'm out of time. If I may briefly answer the question. Brevard County, they explicitly provide that picking and choosing amongst religions is religious discrimination. That is a sister circuit for binding precedent. I would cite that O.C. v. Malcon case that arose out of the main issue from this court. That's 2022. Before that, Larson v. Valente, which was also discrimination among religions. And then before that, once again, I think it was Everson v. Ford. I see that my time is up. I'd reserve the rest for recall. Thank you. Unless the court has further questions. Judge Lynch, anything? Thank you. Thank you, counsel. At this time, if counsel for the City of Boston  Good morning, Your Honor. May it please the Court. My name is Edward Whitesell from the City of Boston Law Department. I represent the City of Boston in this case. At issue is the Boston City Council's legislative invocation selection process. And the undisputed facts are that this process involved politics, not proselytizing. The District Court's decision in summary judgment should be affirmed for a few reasons. One, as we were just discussing, the process is constitutionally sound under Martian Town of Greece. Two, there was no discrimination here against the Satanic Temple, specifically based on their religion. And three, the state claim should be dismissed because there was no substantial burden on their right to exercise the religion. And four, one of the issues in this case is whether or not the Satanic Temple was allowed to take the deposition. Can I just make sure I understand the first point? Suppose the selection criteria announced by rule is each city counselor can ask for an invocation to be made by whatever religious figure they think is most politically advantageous to them to choose. Is that permissible? Sure. And it's not whatever. They get three opportunities every year. And the counselors may choose. Because just when I hear that, I'm having a feeling not many are going to pick the Satanic Temple. But this is not, I want to be clear, this is not an open forum. This is government speech. And that's the law of the case here. It's not a speech question. It's an establishment question. There is a potential here of a serious establishment clause concerns, which you would do better, I think, to reply to directly. And Chief Judge Barron's question went right to the heart of that. The system set up is designed to further the political careers of each of the Boston city counselors by permitting them to invite whoever they think is most politically advantageous to them. Let's assume, hypothetically, because I don't think this record shows it, that there is a consistent pattern of counselors choosing the majoritarian religion of their particular district and going on with effusive praise for the particular minister, rabbi, imam, whoever. In your view, could there be an establishment as applied clause problem under those circumstances? Yes, if it was shown that the subjective intent was to select from one. No, no, it can't be a subjective intent. Because every counselor is going to say, I did it to further my political career, and it just happens to coincide with the majoritarian religions. But the town of Greece also happened to coincide with what the majoritarian religions were. It was a very homogenized religious area, and it was primarily coming from one or two Christian denominations. But what was the selection criteria there? Well, they did it differently. They looked for people to come speak. It just so happened that most of the people in that... But see, the difference between the two is the objective mechanism of choice there isn't baked into it something that would tend to make the assessment one which favors the majoritarian religion. The selection criterion might end up favoring majoritarian religions because that's the only religions that are dominant in the area. But the selection criteria is literally first come, first served. Everybody has an equal chance at that. When you add a screening device, like what's politically advantageous, the worry is that that just encourages them to make an assessment. Well, what's particularly advantageous is whatever most people are. So I want the religions that most people are. And that has the problem of then... The town of Greece doesn't endorse that. I don't read it to endorse that. There has to be evidence of intent to discriminate on the part of the counselors in the selection process. That is part of the stand. So if we... I'm sorry, Judge Lynch is... Well, go ahead and answer and then I have another question for you because I'm not sure your brother has accurately stated what the questions are before the court. So you're forewarned. I'm going to ask that, but go ahead and answer. So I just... I think the question here... There's a presumption of constitutionality because this is a long-standing historical practice under the precedent. I heard a lot of what that sounds like. We're talking about the Lemon Test in terms of endorsement. That's no longer the law. And I think that was conceded below on summary judgment that endorsement isn't the criteria. The criteria here is there's a presumption of constitutionality arising out of town of Greece and subsequent cases that has to be rebutted with some sort of evidence of discriminatory intent on the part of the counselors. And that is what was intended to be done through the discovery process. A lot of the questions that were asked in the 30B6 deposition, the topics that were listed in the depositions were never taken, went directly to the subjective intent of the counselors. But I thought there were two, and maybe there's only one claim, but at least as the district court addressed it, it's certainly the case that if you can prove subjective intent to discriminate, you have a problem. And you're acknowledging that, and then you're saying, but the record doesn't provide a basis for it. But I didn't think, and the district court didn't address it as, and I don't read the cases to say that is the only route by which there could be an establishment clause violation. I assume if the selection criterion was whoever has the largest congregation gets to do the invocation. Would that be permissible? Not if that was the only people who were giving the prayer. But that's not the case here. That's so far remotely from the facts. But you see what I'm saying? That's not a subjective intent of discriminate, but it would still raise a real serious problem. It's very different than town of Greece. So I think what the argument here, and I don't know whether this part of the case is before us or not. Your Honor. I have a suspicion is what you're going to say. Well, there was a question below raised by the district court judge as to whether or not the satanic temple was challenging the process or whether they were seeking to participate in it. And they answered on the record that they wanted to participate in it. So the district court addressed first whether or not there was discrimination against the satanic temple. And then went back, I presume out of an abundance of caution, in case the First Circuit was interested in the process, as it clearly appears that you are, discussed the constitutionality of the scheme and analyzed it. Do you think that issue is before us or not? I think that you have the ability to consider other arguments that the district court didn't necessarily find dispositive to the outcome. I guess what I'm saying, do you think that's in the complaint, that issue? I think that was how it was originally pleaded, yes. The process? The process, yes. I do believe that was the original intent of the complaint. I think that what's happened is during the summary judgment argument, the district court asked flat out, do you want to participate or do you want this process eliminated? And they said they want to participate. I do think the court assumed that you would have the ability to consider the process as a whole and attempted to extrapolate from the subsequent jurisprudence what factors were considered important. It broke those down into five factors, the identity of the speaker, whether the speaker is paid, whether the content is reviewed, whether the nature of the prayer proselytizes or denigrates other religions, which I think is the key factor. And finally, the actual selection process, which is what I think the court is focused on, Rubin obviously being a shining example out of the Ninth Circuit with written criteria for what the selection process is, and conceitedly the district court was concerned about there not being written process here. But when you look at all of the factors as a whole, I don't believe that the process that the city has violates the establishment clause. The things that matter in the cases which strike down these processes. From the city's perspective, how would you describe what the record shows the process is as the record comes to us? Sure. The process is at the beginning of the year, the staff sits down, figures out what days they're going to have city council meetings. They randomly assign city councilors to those Wednesdays to pick someone from the community to give an invocation. There is no requirement that it be a religious speech. There have been, the Boston Debate League was invited on one occasion. There are others I'm sure that are not in this record. Maureen Feeney, the clerk, has given, read from a book of reflections when there hasn't been a speaker available. Primarily, they are religious speakers. Primarily, they are people who are invited from the districts. They are of all different denominations. But it is up to the councilors themselves because it is their speech that's at issue and they're selecting who they want to speak on their behalf. So that... I'm sorry, Your Honor. Your brother opened by saying the test was whether the process involved showed respect for all possible voices in the religious and non-religious world and an honest endeavor to achieve neutrality. I thought that the criteria after Town of Greece were whether discrimination had been shown and whether disrespect for a particular religious group had been shown and that you look at the five criteria which you identified. I was surprised that in your opening you did not dispute your brother's statement of criteria by which we are to evaluate this case. Are you conceding it? No, Your Honor. The criteria are as I just said and as you just specified. There has to be some denigration of religion. The Town of Greece quote is that what the circumstances would be if they may have reached a different outcome. They said, If the course and practice over time shows that the invocations denigrate nonbelievers or religious minorities, threaten damnation or preach conversion, many present may consider the prayer to fall short of the desire to elevate the purpose of the occasion and unite the lawmakers in their common advocacy. But that's in a case in which the selection criterion was first come, first serve. So I don't think Town of Greece means to say no matter the selection criterion, that always has to occur for it to be an endorsement. That wouldn't make any sense. Well, that's the point. It's to prevent selection of one religion over another. To elevate one religion at the expense of another. Right. And clearly they're holding that first come, first serve doesn't do that. But if it's first come, first serve and then what is spoken is damnation and all of that, that's its own problem. But we don't have first come, first serve here. And so I guess the question is, when we have this type of selection criteria, what do we do under Town of Greece? Because it didn't address this type of selection criteria. I think that the same requirements hold. I believe that there still has to be an intent on the part of the counselors to denigrate one religion or raise one religion up at the expense of another. There's clearly none of that here. Suppose this were 1920s Boston and in the last three years every single person invited was Christian and there were two Jewish temples asking to be invited and they weren't. I think you would have a problem. How's that different? Because you have a clear record of the city counselors inviting people of all sorts of denominations. They'd say the same thing. We've got Catholics, we've got Lutherans, we've got Methodists, and on and on and on. They just didn't happen to have any Jewish rabbis. I don't think this is a disparate impact type of analysis. I think that you're looking at... No, but I think you agree that would be problematic. That would be certainly a lot more problematic than this case. Isn't this the exact same thing I just said to you as a substitute for Jewish, the satanic temple? No, because the reason why the satanic temple was not selected had nothing to do with them being the satanic temple. It had to do with, frankly, what Counselor Savi-George said was that she had never heard of them before they asked. She has heard of them now. But they're based in Salem, they have no connection to the community, and that's what, from the subjective intent of the counselors, that was what the decision was in their minds and we have clear evidence of that on the limited record that we had after discovery that the counselors were choosing people who had done good deeds in the community, who had done good work in the community, poverty things, any hunger, those types of services to the community. Now, would the case be different if satanic temple was not in Salem but was in Boston, the Dorchester? The case would be different. I don't know if the outcome would be different. There are plenty of groups, I'm sure, that don't get invites that do good deeds in the city of Boston and haven't been invited to give an invocation. The reason why this one is that issue is because they've tried to compel an invitation in these circumstances. So I think you would have a closer issue if the satanic temple was active in one of the communities or one of the districts, then there would be a bigger problem. But that's not the case here. I'm confused as to the criteria. On the one hand, I thought you were saying it was politics who would further the career of the city counselor. On the other hand, I then thought you said in response to my last question that it was who did good deeds in the community. I would suggest those two things go hand in hand. Yes, if we had a Venn diagram, it would overlap, but it wouldn't completely. I think the stated intent on the part of the counselors is to reward and give the opportunity to give an invocation to people who do good things in their community. Perhaps it is my cynical interpretation of that, that that is also, and I know Counselor Asabi-George did say that everything she does, including the invitations to come give an invocation, are political and that they're motivated by political intent. How do we know that's the selection criteria when it's not written down? Only from the testimony of the people who've done the selections. It was pretty uniform and universal that they said that. The deposition of Counselor Asabi-George, Mayor Wu outlined it in an email when she was a counselor at the time. Counselor McCarthy said it to NBC Boston when this was an issue at the time. They all essentially echoed the same idea. There were a number of people they wanted to offer this to in the community and they were going down the list. What's the case that says a discretionary invitation selection process for invocations, which can be religious in nature and which are expected to be religious in nature, at least in a significant number of instances, is permissible? There was a Satanic Temple case at Scottsdale, and obviously my opposing counsel is more familiar with that than I am. But I think there was a similar situation where they were invited and then the invitation was withdrawn. And then after a bench trial, they were unsuccessful on, I believe, both Establishment Clause and Free Exercise Clause grounds. That was a case where there was an invitation process that was upheld by the Ninth Circuit. Some of these cases are legislative leg cases, which I think is certainly a higher issue when it comes to Establishment Clause. I believe, and I'm not positive, but I believe Rubin was also invitation and it had a written criteria, so there's certainly a stronger enforcement in terms of what things being under the Establishment Clause, they're laid out, what they do to try to make sure that it's fair. But I don't think, and the District Court didn't find, that that kind of written criteria is necessary in order to make it sufficient under the Establishment Clause. Counsel, on a couple of the YouTubes, it appears that everyone who is in the council chamber is asked to stand during the invocation. Is that, is there a policy one way or the other, or is that just left to, who is it left to? Well, I believe that that's generally the invocation speaker. I believe Tom agrees to address that when it is the invocation speaker, that they assume that that's part of them giving their normal prayer and that they're doing what they would normally do in their congregations and that that did not run afoul of the Establishment Clause. They are asked to rise for the Pledge of Allegiance, but that is an entirely different issue than what we have here today. So I would say Tom agrees, says if the invocation giver is asking someone to rise, that that in and of itself is not offensive of the Establishment Clause. Thank you. I see that I'm over my time.  Thank you, Counsel. At this time, if Counsel for the Appellant would please reintroduce himself on the record. He has a three-minute rebuttal. Thank you, Your Honors. May it please the Court. Once again, this is Matt Keziah speaking for the Satanic Temple. I want to open with Judge Lynch's question. It's not the invocator who's asking people to stand, it's the Council President. Counselor Asabi George explicitly stated that there's generally an expectation that people stand. How that expectation is communicated depends on who's running the meeting. The Council President is the one who runs the meeting, not the invocator. In order to rule in favor of the City of Boston, the Court's going to have to make a holding that you have to lobby for equal rights. You have equal rights, but you have to somehow engage in some kind of politicking in order to get your equal rights. How do you distinguish the Ninth Circuit case? Rubin? Rubin is materially different for multiple reasons. Number one, they had a written policy. Number two, it was first come, first served. It was first come, first served. It was first come, first served. Number three, the clerk had no discretion in determining who was there was no content-based determinations in free speech language. There were no content-based determinations. As you understand it, is there any case of holding a discretionary selection process for an invocation? There is one case that arises out of the Third Circuit. The name escapes me. It's Post Town of Greece. There's actually two from the Third Circuit, but the first one predates Town of Greece and is wrong because it conflicts with Town of Greece. The second case came out. It was a pagan. They wanted to pray to Demeter, and they said, no, you can't pray to Demeter. It has to be a monotheistic god. You can't pray to polytheistic gods of some sort. They said that's okay, and the reason being is that we don't want to make perfect the enemy of good. That is bad policy.  and it's only the Third Circuit that has gone down that route. That's Post Town of Greece? That's Post Town of Greece. The other two cases that have arisen since Town of Greece is the Fourth Circuit, Lund v. Rowan County, which goes the other way, and Williamson v. Brevard County, which also goes our way. Our case arising out of the Ninth Circuit, which also postdates Town of Greece, that was not discretionary. What they said is, oh, well, you don't have adequate community ties. We got a bench trial. We didn't lose on summary judgment. That's what distinguishes this case from Scottsdale. I want to address this false notion that every flavor of religion was getting invited. That's categorically false. Pre-TST's request for invitations and litigation being on the horizon, 94% in July of 2015 to June of 2016, 94% were Christian, 6% were Jewish, 0% everyone else. Imams did not start getting invited, and they only cite to one, Tobin Imam, by the way, in light of TST's demands for equal inclusion. They address government speech. Government speech is bounded by the Assassination Clause, so it doesn't really matter so much that it's government speech. Just remind me what the remedy being sought here is. The remedy being sought is either of two. Number one, we want in. However, under Rule 54D, if I may, under Rule 54D, it's the court's prerogative to determine what the just outcome is. We have pleaded an Assassination Clause claim. The court can... Is there any damages claim? Nominal. $1 damage. We don't claim any special damages like we didn't... I guess what I'm saying, if there were written criteria that were to come out, would that move the case? Sorry, say again? If there were written criteria that were to come out from the city council, would that move the case? It would not. Because you can't undo the damage from 2006. And that's what I'm asking. The damage is the nominal damage? It's nominal damages. Ultimately, it's just a decree that their rights were harmed. Ultimately, this is everyone's rights. This isn't just the Tampa Harris. Counsel,  to say you have to have done something beneficial within the community, perhaps within the district of a particular counselor, what has Satanic Temple done within the community of Boston that meets that criteria? First of all, I dispute that it is a neutral criterion because it's just whatever the counselor feels like is neutral. There is no neutrality when it's just whatever the counselor feels. Okay, well, why pass out an answer? To answer the question, we've participated in Boston's Pride Parade. We've participated in, it's called Ministrating with Satan. It's a donating of tampons and whatnot for women in need for hygiene purposes. I believe the district court actually made some specific findings about the various issues that we raised below. I blank out on the rest of them. But there are community, there is community involvement. What's going on is that the counselors just choose not to consider it. And when we confronted Counselor Sabi George with this is our community involvement, this is who we are, this is what we believe in, she didn't want anything to do with it. You can't just put blinders up and say, well, you don't exist because I choose to ignore you. That's religious gerrymandering. Walls says you can't do that. Justice Brennan's opinion in Walls says you can't do that, which was adopted by Church of Cumbia Bapua. Thank you. Thank you for your time, sir. Thank you, Counsel. That concludes argument in this case.